IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DISABLED PATRIOTS OF AMERICA, INC.,** a Florida Not-For-Profit Corporation, and **BONNIE KRAMER, Individually,** <br><br> Plaintiffs, <br><br> v. <br><br> **TOWN & COUNTRY CHICAGO ASSOCIATES, LLC,** A Foreign Limited Liability Company, <br><br> Defendant. <br> _____ | : Case No.: 1:07-cv-06362 <br> : <br> : Judge Joan H. Lefkow <br> : <br> : <br> : <br> : **PLAINTIFFS' MOTION TO** <br> : **COMPEL ANSWERS TO** <br> : **INTERROGATORIES,** <br> : **RESPONSES TO REQUESTS FOR** <br> : **PRODUCTION AND TO** <br> : **COMPEL SUBMISSION TO R. 34** <br> **INSPECTION** |

  Plaintiffs, DISABLED PATRIOTS OF AMERICA, INC., and BONNIE KRAMER, and by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 37 and Local Rule 37.2, hereby file this Motion To Compel Defendant to provide full and complete Answers To Interrogatories, full and compete responses to Requests For Production of documents, and to submit to an inspection of its premises pursuant to Fed. R. Civ. P. 34, and state as follows:

  1. Plaintiffs, disabled persons, commenced the instant pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. Sections 12181, et seq. ("ADA"), seeking injunctive relief for the removal of barriers to access present at Defendant's place of public accommodation known as Town And Country Mall.

  2. On January 14, 2008, the parties filed their proposed joint planning report setting forth a proposed discovery plan. [DE 14.]

  3. On January 30, 2008, Defendant took the deposition of individual Plaintiff Bonnie

Kramer. During her deposition, Plaintiff Kramer testified how she visited the property and encountered numerous ADA violations. In response to the aggressive examination by Defendant's attorney Michael Leonard, Esq., Ms. Kramer provided detailed testimony about the ADA violations she encountered and observed including, but not limited to, significant violations in restrooms, parking, changes in levels and routes of access.

4. Prior to the taking of Ms. Kramer's deposition, Plaintiffs had propounded Interrogatories, Requests for Production of Documents and issued a R. 34 notice upon Defendant. A copy of the R. 34 notice is attached as Exhibit A.

5. On February 1, 2008, Michael Leonard sent an email to the undersigned stating, in relevant part:

> "Tom, I will be sending you a Rule 11 letter. But, no, we will not agree to the Inspection. Ms. Kramer's deposition revealed that she essentially filed a boilerplate Complaint that did not match up to her personal knowledge. Thanks, Mike Leonard."

See Exhibit B attached hereto.

6. On February 4, 2008, Attorneys Tom Bacon and Michael Leonard engaged in a telephone conversation wherein Mr. Leonard reiterated his R. 11 threat and stated that Defendant would not seek attorney fees and costs (effectively sanctions) if Plaintiffs immediately dismiss the instant lawsuit. Mr. Leonard promised, however, that Defendant would be serving its responses to Interrogatories and Requests for Production later in the week.

7. In its Answers to Interrogatories and Requests for Production, Defendant admitted ownership of the subject property but otherwise submitted a blanked refusal to provide any responses. Defendant asserted the repeated objections of irrelevance, harassment, overbreadth, and undue burden. Into each reply, Mr. Leonard and his client cut and pasted the same

statement,

> "Defendant further states that Plaintiffs are not entitled to the requested discovery because Plaintiff Kramer admitted during her deposition testimony that she did not have a factual basis for her claims."

A copy of the respective Interrogatories and Requests for Production, with Defendant's Answers and Objections thereto, are attached as Exhibits C and D.

8. For the reasons set forth herein, Plaintiffs are entitled to an Order compelling Defendant to file full and complete responses to the Interrogatories and Requests for Production and to submit to a R. 34 inspection of its premises.

## MEMORANDUM

All the foregoing requests for information are designed to elicit information which is relevant to the subject matter in the pending lawsuit. The discovery requests not only appear calculated to lead to the discovery of admissible evidence, but seek information and documents which would in fact be themselves admissible. Fed.R.Civ.P.26 (b)(1). Defendant's blanket objections that the discovery is overbroad, harassing, unduly burdensome and seeks information which is not relevant or not reasonably calculated to lead to the discovery of admissible evidence, entirely lack merit.

This is an action brought by Plaintiffs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181, et. seq. Defendant's property is a place of public accommodation and is required to remove discriminatory barriers to the physically disabled.

1. <u>Plaintiffs' discovery requests are relevant to ADA standards pertaining to construction, modifications, alterations to the premises and ADA improvements:</u>

Defendant has refused to provide responses to Plaintiffs' Interrogatories and Requests for

3

Production seeking information regarding building permits, construction, remodeling, and or alterations to the property after 1992 and modifications performed in an effort to comply with the ADA.  See responses to Interrogatories 3, 4, 5, 6 and 10 and Requests For Production Nos. a, b, i, o, p, r, s, and t.

In the absence of Defendant's responses, it must be assumed for purposes of argument that Defendant's place of public accommodation, a shopping facility, was presumably built prior to the 1992 effective date of the ADA.  However, as with most shopping facilities, modifications, alterations, renovations, and new construction is continuously performed as the shopping facility is updated and tenants are replaced. The work performed by the Defendant in this regard is highly relevant to the applicable standards which apply.  For these reasons, all such alterations, modifications, ADA compliance measures, etc., to Defendant's facility are relevant because the surveying expert witness must determine whether the "maximum extent feasible" standard or the "readily achievable" standard applies.

The applicable provisions of the ADA, as promulgated under 28 C.F.R. Chapter 36, apply differing standards and obligations upon a place of public accommodation depending on when a facility and/or its specific elements were constructed, altered, modified, or renovated.

New Construction - 28 C.F.R. Subpart 36.401 requires that all facilities available for first occupancy after January 26, 1993, must be designed and constructed so that they are "readily accessible to and usable by individuals with disabilities".

Altered Portions - 28 C.F.R. Subpart 36.402 requires that any alteration to such a facility after January 26, 1992, be made to ensure that, "to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities,

4

including individuals who use wheelchairs." Alterations include, but are not limited to, "remodeling, renovation, rehabilitation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangement in the plan configuration of walls and full-height partitions." 28 C.F.R. Subpart 36.402(b).

ADA Improvements Performed By Defendant – To the extent that Defendant has, since the enactment date of the ADA, made any improvements in an attempt to comply with its requirements, it is paramount that all such measures conform to the applicable ADAAG standards. Pickern v. Best Western Timber Cove Lodge, 2002 WL 202442, 2002 U.S. Dist. Lexis 1709 (E.D. Cal. 2002). In other words, all work performed by the Defendant in an attempt to comply with the ADA – ramps, grab bars, parking, restrooms, etc. – must adhere to the applicable scoping provisions set forth in the ADAAGs.

For these reasons, it is critical for Defendant to provide a detailed list of all alterations, new construction, improvements, renovations and ADA compliance measures, together with the dates each such measure was taken.

2. Plaintiffs' discovery requests are relevant to the ADA's readily achievable standard for pre-existing elements

With respect to portions of a facility which pre-existed the ADA and in which no alterations or new construction have been effected, the regulations set forth a different standard. 28 C.F.R. Subpart 36.304 requires the facility to remove architectural barriers "where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense." The regulations set forth an inexhaustive list of barrier removal, including: installation of ramps, curb cuts in sidewalks and entrances, repositioning shelves, rearranging tables, chairs, vending machines, display racks and other furniture, repositioning

telephones, widening doors and doorways, elimination of turnstiles or creating alternate accessible pathways, installation of grab bars, rearrangement of toilet partitions, insulation of lavatory pipes, repositioning toilet paper dispensers, raising toilet seats, creation of accessible parking.

As explained in 28 CFR Section 36.104, "readily achievable" within the meaning of the Americans With Disabilities Act of 1990 means easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable the factors to be considered include:

1. <u>The nature and cost of the accommodation at issue:</u>

2. <u>The overall financial resources of the sites involved in the action</u>: the number of persons employed at the site or sites involved in the action; the number of persons employed at the site; <u>the effect on expenses and resources</u>; legitimate safety requirements that are necessary for safe operation, including crime prevention measures; or the impact otherwise of the action upon the operation of the site (emphasis added).

3. The geographic separateness, and the administrative or <u>fiscal relationship of the site in question to any parent corporation or entity with respect to the number of its employees</u>; the number, type and location of its facilities; and

4. If applicable, the <u>overall financial resources of any parent corporation or entity</u>; and

5. If applicable, the type of operation or operations of any parent corporation or entity, including the composition, structure, and functions of the workforce of the parent corporation or entity.

28 C.F.R. § 36.104 (emphasis added).

Whether the removal of the architectural barriers is "readily achievable" is a key, if not the most crucial issue to be resolved at trial. Central to the resolution of that issue is the

financial resources of Defendant, and Defendant's financial ability to readily remove the architectural barriers.

In this regard, Defendant has refused to answer all discovery inquiries regarding revenue derived from the property, financial information, mortgages, number of employees, and lease revenues.  See responses to Interrogatories No. 11, and Requests For Production Nos. c, d, e, f, g, h, j, and k.

These discovery requests are entirely relevant to the overall financial resources of the Defendant in determining whether the implementation of ADA compliance is readily achievable. The Code of Federal Regulations explain that the overall financial resources of the sites involved in the action, and the effect that the removal of the architectural barrier would have on the expenses and resources of the defendant are factors to be considered by the Court.

Therefore, the Defendant's financial statements, general ledgers, income tax returns, and other financial documentation being requested by the Plaintiffs are relevant.  While Plaintiffs can obtain its own expert to formulate opinions as to whether Defendant's property is in violation of the Americans with Disability Act Accessibility Guidelines (ADAAG), or the cost of the repairs needed to bring Defendant's property into ADA compliance, Plaintiffs' expert cannot express meaningful opinions as to Defendant's financial ability to make the repairs unless Plaintiffs are provided through discovery the requested financial records of the Defendant.

The records requested from the Defendant are limited in time to the years 1992 through the present, and therefore, should not be burdensome for Defendant to produce. Additionally, the Americans with Disabilities Act, enacted in 1990, gave Defendant until 1992 to remove the architectural barriers, and bring its property into compliance. Therefore, the Defendant's

financial ability over the past sixteen years (since 1992) to remove the barriers, and bring its property into compliance, is relevant.

Defendant has had sixteen years to bring its facility into compliance with the ADA on a "readily achievable" basis. Defendant has refused to provide complete responses to any discovery inquiries which explore this legal issue.

3. Additional Discovery Requests:

a. Tenant spaces:

Defendant's blanket refusal to respond to discovery requests regarding tenant spaces and agreements are set forth in its responses to Interrogatories No.13 and Requests For Production No. k.

The ADA imposes independent liability upon both lessors and lessees of a subject premises. 42 U.S.C. Section 12182(a). See also 28 C.F.R. Subparts 36.201(a) and (b). As such, Defendant's tenants are potentially liable for failure to comply with the ADA's requirements. Under the ADAAGs, both landlord and tenants are required to provide equal access to all facilities located in tenant spaces. The ADAAGs are replete with requirements pertaining to, among other things, counters, maneuvering spaces, reach ranges, aisles, restrooms, protruding objects, signage, dressing rooms, restaurants and cafeterias and service counters. See, e.g., 28 C.F.R. Part 36, subsections 4.2, 4.3, 4.4, 4.5, 4.17, 4.18, 4.19, 4.23, 4.24, 4.30, 4.35, 5.1 et seq., 7.1, 7.2, 7.3.

Information regarding tenants, their spaces and agreements, is further relevant to whether a tenant space was renovated after the enactment date of the ADA, whether the tenant's contract contains references to compliance with applicable federal law, and the amount of revenues

derived from the tenant for use of the space.

      b.  Parking:

Defendant's blanket refusal to respond to discovery requests regarding parking are set forth in its responses to Interrogatories Nos. 7 and 12 and Requests For Production No. n.

In this respect, the number of total and designated parking spaces at Defendant's facility is crucial in calculating the number of designated spaces required by the ADAAG pursuant to 28 C.F.R. Part 36, subsection 4.1.2.

      c.  Management Agreements:

Defendant's blanket refusal to respond to discovery requests regarding management agreements are set forth in its response to Request For Production No. q.  However, 42 U.S.C. Section 12182(a) imposes liability upon any property manager as the operator of the place of public accommodation.  For this reason, any existing management agreement is highly relevant to this action.

      d.  Elevators:

Defendant's blanket refusal to respond to discovery requests regarding elevators are set forth in its response to Interrogatory No. 8.  Contrary to Defendant's assertion that this discovery is irrelevant, elevators are specifically scoped by the ADAAG, at 28 U.S.C. Part 36, subsection 4.10.  Therefore, the information sought by Plaintiffs on this issue is relevant.

      e. Restrooms:

Defendant's blanket refusal to respond to discovery requests regarding restrooms are set forth in its responses to Interrogatories Nos. 9 and 10.  Again, contrary to Defendant's repeated assertion of irrelevance, restrooms are highly scoped by the ADAAGs.  See, e.g., 28 U.S.C. Part

36, subsections 4.16, 4.17, 4.18, 4.19, 4.22, 4.23, 4.24, 4.26, 4.27 and 4.30.  Therefore, the discovery sought in this regard is highly relevant.

      f.  Non-ADA construction, remodeling, alterations and modifications:

Defendant's blanket refusal to respond to discovery requests regarding construction, remodeling, alterations and modifications post ADA enactment are set forth in its responses to Interrogatories Nos.3, 4, and 6, and Requests For Production Nos. a, o, p, r, s, and t.  Quite simply, this information is highly relevant for two reasons.  First, all such post ADA work should have been performed in a fully compliant fashion at the time.  Second, the amount of such work and the monies expended by Defendant in this regard are highly relevant if Defendant is to claim that other work intended to achieve ADA compliance would not have been readily achievable for financial or other reasons.

      4.  <u>Defendant's Blanket Claim That Plaintiff Is Not Entitled To Discovery And Threat Of Rule 11 Sanctions</u>

Defendant's spurious claim that Plaintiffs are not entitled to any discovery and threat of Rule 11 sanctions requires special attention.  Defendant's counsel, Michael Leonard, has claimed that Plaintiffs' Complaint is "boilerplate" and that "Plaintiff Kramer admitted during her deposition testimony that she did not have a factual basis for her claims."  Mr. Leonard should show his cause for making such threats and submit the entire, un-redacted, transcript of Ms. Kramer's deposition into the Record for the Court's review.  Rule 11 threats should not be made routinely or recklessly.

Indeed, a review of the transcript will show that Ms. Kramer is a wheelchair bound disabled person, visited the premises, and both personally encountered and was aware of a host

of ADA violations at Defendant's premises. Defendant and Mr. Leonard should show to the Court what of Plaintiffs' claims or allegations are factually inaccurate, contradicted by testimony or contrived.

Indeed, Mr. Leonard's threats bear no basis in caselaw applicable to the ADA. It does not matter that a disabled person personally encountered each and every violation present at a public accommodation. Rather, once a disabled person has personally encountered a discriminatory barrier, he/she has the right to seek injunctive relief for the removal of all discriminatory barriers relevant to that person's particular disability. See Doran v. 7-Eleven, Inc., 2007 U.S. App. Lexis 26143 *16 (9th Cir. 2007); Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1138 (9th Cir. 2002); Steger v. Franco, 228 F.3d 889, 894 (8th Cir. 2000); Parr v. Kapahulu Investments, 96 F. Supp.2d 1065, 1081 (D. Haw. 2000); Wilson v. Pier 1 Imports, 439 F. Supp.2d 1054,1063-64 (E. D. Ca. 2006); Gregory v. Melrose Group, 2003 U.S. Dist Lexis 22276 *14 (E.D. La. 2003).

Nor is an ADA Plaintiff's right to injunctive relief limited to the specific violations alleged in his or her complaint. Wilson v. Pier 1 Imports, 439 F. Supp.2d 1054, 1063-64 (E. D. Ca. 2006); Gregory v. Melrose Group, 2003 U.S. Dist Lexis 22276 *14 (E.D. La. 2003); Eiden v. Home Depot, Inc,. 2006 U.S. Dist. Lexis 38423 * 13-15 (E.D. Cal. 2006).

In practice, one meets the occasional attorney who passes out R. 11 threats as frequently as business cards. Plaintiffs submit that a full review of the transcript of Ms. Kramer's deposition will raise the question of how any attorney, in good faith, could possibly argue that Plaintiffs have no right to discovery and have so completely concocted a series of allegations that R. 11 sanctions should be threatened.

5. <u>Plaintiffs Are Entitled To Conduct A R. 34 Inspection Of The Premises</u>

In <u>Doran v. 7-Eleven, Inc.,</u> 2007 U.S. App. Lexis 26143 (9th Cir. 2007), the Ninth Circuit recently held that an ADA Plaintiff has right to seek discovery of the entirety of barriers as a necessary pre-requisite to the crafting of injunctive relief. In this regard, Plaintiffs have sought, and Defendant has denied, the right to have an ADA expert perform a survey of the subject premises to detail the existence of ADA violations and propose remedial measures. Plaintiffs submit that Defendant's objections are scandalous and unwarranted.

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that this Court grant the instant motion to compel and require Defendant to provide full and complete responses to all outstanding discovery and submit to a R. 34 inspection.

## Certificate of Conference

I hereby certify that I spoke by telephone with Michael Leonard, attorney for Defendant on February 4, 2008, in a good faith attempt to resolve Defendant's refusal to submit to the R. 34 inspection of the premises, but was unable to reach an accord. On February 18, I called Mr. Leonard and left a message in a good faith attempt to resolve Defendant's refusal to provide discovery responses and left a message on his voice mail. As of the date of this filing, opposing counsel has not responded.

Respectfully submitted,

Attorneys for Plaintiffs:
\_\_/s/ Thomas B. Bacon\_\_
Thomas B. Bacon, Esq.
Attorney-At-Law
1515 Grant Street
Hollywood, FL 33020
ph. (954) 925-6488
fax (954) 237-5506

and

Jonathan E. Lerner, Esq.
P.O. Box 694
Wilmette, IL 60091
847-271-2360
fx 847-256-3038

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served upon the persons listed below this 21st day of February, 2008, via the Court's CM/ECF system:

Michael L. Leonard, Esq.
Mecker, Bulger & Tilson, LLP
123 North Wacker Drive, Suite 1800
Chicago, IL 60606

/s/ Thomas B. Bacon