IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DISABLED PATRIOTS OF AMERICA, INC., a Florida Not-For-Profit Corporation, and BONNIE KRAMER, Individually,<br><br>　　　　　Plaintiffs,<br>v.<br><br>TOWN & COUNTRY CHICAGO ASSOCIATES, LLC, A Foreign Limited Liability Company,<br><br>　　　　　Defendant. | Case No.: 1:07-cv-06362<br><br>Joan H. Lefkow |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO RULE 11**

Defendant, by its undersigned counsel, moves this Court to Dismiss Plaintiffs' Complaint for failure to comply with Rule 11. In support of this Motion, Defendant states as follows:

**I.　　Background**

This is an action brought by the Plaintiffs purportedly to seek redress under the Americans with Disabilities Act ("ADA"). The two Plaintiffs to this action have filed at least 75 to 100 of these types of lawsuits in the federal courts throughout the United States. (*See* Kramer deposition transcript, attached hereto as Exhibit 2, at pp. 160-163) Recently, these two Plaintiffs filed a slew of these cases in this District. (*Id.* at pp. 158-160) Tellingly, the cases that Plaintiffs have filed in this District are virtually identical. (*Id.*; *see also* copies of the other Complaints recently filed in this District by Plaintiffs, attached hereto as Group Exhibit 1) In short, in each of the cases that Plaintiffs have filed in this District, they have alleged a vast litany of alleged ADA violations. However, as further set forth below, Plaintiffs -- at least in the present case -- had no

basis for filing this action and have admitted that they pled allegations that are wholly without basis with respect to Defendant's premises.

Defendant has already filed a Motion to Dismiss, which is currently pending before this Court. Based upon information that was recently revealed for the first time during Plaintiff Kramer's deposition in this action, Defendant hereby moves to dismiss Plaintiffs' claims for failure to comply with Rule 11.

## II. **Plaintiff Kramer's Deposition Testimony In The Present Action**

### A. **Ms. Kramer's Visit To Defendant's Property**

In their Complaint, Plaintiffs allege that Defendant has committed numerous, wide-ranging violations of the ADA. However, during her January 30, 2008 deposition in this case, it quickly became apparent that the Plaintiffs had no good faith basis for even bringing the present action.

Ms. Kramer testified that, while in town visiting her son who lives in Chicago, she happened to be driving by Defendant's premises (a large, sprawling mall-like complex, with a variety of stores – some freestanding and some as part of an enclosed mall) and decided to stop and pick up a couple items. (*See* Kramer dep., Ex. 2, at pp. 20-21, 25-26, 76) Ms. Kramer testified that she does not know anyone else who has ever been to Defendant's premises, and that she does not know anyone who intends to ever visit those premises. (*Id.* at p. 77)

Ms. Kramer testified that she has no idea where they parked within the large parking lot. (*Id.* at pp. 23, 27) However, Ms. Kramer testified that "the signage was wrong" for purposes of designating disabled/handicapped spots. (*Id.* at p. 25) She explained that, although she has no idea whatsoever how high up in the air such signs are required to be placed for purposes of the ADA; or how high up in the air the sign she viewed was actually placed; she believed the sign's placement might possibly constitute a violation of the ADA. (*Id.* at pp. 28-30)

Ms. Kramer next testified that there was no "access aisle" near the unidentified area they parked. (*Id.* at p. 25) Ms. Kramer has no idea where they parked within the large parking lot. (*Id.* at pp. 34-35) Moreover, Ms. Kramer admitted that the parking lot actually contained such access aisles, but she claimed that there was not one present in the unidentified area where they parked their car. (*Id.* at pp. 32-35) Ms. Kramer admitted that she was not personally affected or endangered in any way because of the alleged absence of that one access aisle in that unidentified location. (*Id.* at p. 32)

Ms. Kramer testified that she does not even know where she entered any of the stores within this large complex, but that the entrance was located some 10 to 50 feet away from the unidentified area where they parked. (*Id.* at p. 37-38) Ms. Kramer recalled that, as they were traveling that short distance, they went over some "uneven ground" in an area that she cannot even identify. (*Id.* at pp. 39-41) Ms. Kramer admitted that this uneven ground, in its unidentified location, did not in any way affect her or otherwise put her in any danger. (*Id.* at pp. 37-40)

Ms. Kramer testified that, once inside some unidentified store or location, she then went into a bathroom. Ms. Kramer has no idea where that bathroom was located, or whether it was even located inside one of the stores or not. (*Id.* at pp. 42-43) With respect to this unidentified bathroom, Ms. Kramer testified that "the sink was not wrapped underneath." (*Id.* at p. 47) Ms. Kramer speculated that, if someone touched that sink in the area directly underneath it, it might possibly be hot and that one might possibly get burned. (*Id.* at p. 47) However, Ms. Kramer admitted that she never touched this area underneath the sink; that she has no idea whether that area underneath the sink was hot or not; that she has no idea if it actually could become hot; and that she knows of no one who was ever affected by this wholly hypothetical condition. (*Id.* at pp. 47-50)

Ms. Kramer further testified that, in this unidentified bathroom, there was a hook on the door to allow one to hang something up, such as a coat, but that the placement of that hook was too high. (*Id.* at pp. 51-52) However, Ms. Kramer admitted that she has no idea of the height requirements under the ADA for the placement of that hook -- or whether such requirements actually exist -- and that she has idea of the actual height of the hook at issue. (*Id.* at pp. 50-52) Ms. Kramer further testified that she never even attempted to put anything on that hook. (*Id.* at p. 52)

Ms. Kramer next testified that there were "grab bars" located at the back of the toilet in this unidentified bathroom, and that such bars were placed at the proper "height." (*Id.* at pp. 53-54) However, Ms. Kramer testified that it was not of the proper "length" or "width." (*Id.* at pp. 54-55) Yet, Ms. Kramer again admitted that she has no idea what length/width a grab bar should be to comport with the ADA, and that she has no idea of the actual length/width of this particular grab bar in this unidentified bathroom. (*Id.* at p. 54-56)

Finally, Ms. Kramer testified that she believed the "toilet flusher" was on the wrong side of the toilet. (*Id.* at p. 57) However, she admitted that this did not impact her in any way, and that she is not aware of that allegedly improper placement ever having impacted anyone else at any time. (*Id.* at p. 59)

Ms. Kramer admitted that she never went into any other bathrooms at this mall complex. (*Id.* at p. 60)

Ms. Kramer testified that, after using that unidentified bathroom, she went into a "Dominic's" store (*Id.* at pp. 63-64); a "Walgreen's" store (*Id.* at pp. 64-65); and a "Catherine's" store. (*Id.* at pp. 66-67) Ms. Kramer admitted that she *did not* observe or encounter *any* violations of the ADA in any of those facilities. (*Id.* at pp. 64, 66, 68)

4

B.  **Ms. Kramer Admits That She Believed Someone Else Would Investigate Her Vague Observations Before Any Lawsuit Would Be Filed, But That She Has No Knowledge Of That Ever Happening**

Ms. Kramer testified that, some time after her brief visit to Defendant's premies, she called her friend, David Pedraza ("Pedraza"), who she believes is also an ADA expert. (*Id.* at pp. 77-78) Ms. Kramer testified that Pedraza frequently participates in the lawsuits she files. (*Id.* at p. 81) However, Ms. Kramer testified that Pedraza is never paid by her or by her co-Defendant, Disabled Patriots; rather, Pedraza works as an expert in these cases on a contingency fee basis. (*Id.* at pp. 82-83, 98-99) In addition, Ms. Kramer admitted that Pedraza has *not* been retained with respect to the present case. (*Id.* at p. 83, 98-99)

Ms. Kramer testified that she believes she told Pedraza generally about her trip to Chicago, including possibly mentioning her brief visit to Defendant's premises. (*Id.* at pp. 86-88) However, Ms. Kramer testified that is not even sure whether she ever told Pedraza anything specific about her visit to Defendant's premises. (*Id.* at pp. 89-90) In fact, Ms. Kramer admitted that her conversation with Pedraza about that topic, if it occurred at all, likely lasted thirty (30) seconds. (*Id.* at pp. 94-95) Likewise, Ms. Kramer testified that she has no knowledge that Pedraza ever looked into, or otherwise investigated, the observations she made of Defendant's premises (described above). (*Id.* at pp. 89-90) In fact, Ms. Kramer admitted that she never had any communications with Pedraza at any time in which he indicated that he had ever looked into, or investigated, any alleged violations of the ADA at Defendant's premises. (*Id.* at pp. 90-98, 137-138)

C.  **Ms. Kramer Admits That She And Disabled Patriots Are Nothing More Than Straw Plaintiffs, And That The Real Parties In Interest In This Matter Are The Attorneys Of Record For The Plaintiffs**

Ms. Kramer admitted that, in the event that she and/or her co-Plaintiff, Disabled Patriots, prevails in this case and obtains any relief or recovery, that the only persons who will receive such funds are their attorneys of record in this case. (*Id.* at p. 122) Ms. Kramer testified that she would not receive anything from this lawsuit, nor would her purported co-Plaintiff, Disabled Patriots. (*Id.* at p. 122) Ms. Kramer further admitted that she has no interest in this case, nor does Disabled Patriots, and that neither of the Plaintiffs will get anything out of this action. (*Id.* at p. 138)

Ms. Kramer testified that there is not even an agreement between her and the attorneys of record in this case, or between Disabled Patriots and those attorneys. (*Id.* at p. 122) In fact, Ms. Kramer testified that, in all of the ADA lawsuits that the attorneys of record in this case have been involved in with her, those attorneys have never shared any recoveries with either Ms. Kramer or with Disabled Patriots. (*Id.* at pp. 123-124) Even though the attorneys of record in this case have repeatedly represented to this Court that they are attorneys for both Ms. Kramer and Disabled Patriots, Ms. Kramer testified that they *do not* represent her in this case. (*Id.* at p. 128) Indeed, Ms. Kramer testified that she has no idea who decided that the attorneys of record in this action would serve as lawyers in this case. (*Id.* at pp. 128-129)

When asked why her co-Plaintiff, Disabled Patriots, is even a party to the present case, Ms. Kramer stated, "Talk to Mr. Bacon [i.e., one of the attorneys of record in this case]. That's stuff that I don't know about." (*Id.* at pp. 127-128) (brackets added)

        **D.**      **Ms. Kramer Receives The Present Complaint, Out Of The Blue, And Authorizes Its Filing, Verbatim, Even Though She Admits That It Contains Allegations Of Which She Possesses No Knowledge. And That Do Not Even Apply To Defendant's Premises**

Ms. Kramer testified that she never asked the attorneys of record in this action to file this lawsuit. (*Id.* at pp. 129-130) In fact, Ms. Kramer admitted that she never asked anyone to draft such a Complaint, and that she never contacted any attorneys to pursue this action. (*Id.* at pp. 131-132) Nonetheless, Ms. Kramer testified that, one day, out of the blue, one of the attorneys of record in this case sent her a draft of the Complaint that was ultimately filed in the present action. (*Id.* at p. 131) Ms. Kramer testified that she made *no* changes to the draft that was sent to her and which was ultimately filed in this case. (*Id.* at pp. 133-134) Ms. Kramer also admitted that the other lawsuits that she has filed in this District were also just sent to her, and that she did not make any changes to them. (*Id.* at pp. 159-160)

Ms. Kramer admitted that the language and allegations contained in her present lawsuit are virtually identical to the eight or nine other lawsuits that she has filed in this District. (*Id.* at pp. 133, 158-159; *see also* Complaints attached hereto as Group Ex. 1) Yet, Ms. Kramer admitted that the alleged violations of the ADA at the different locations that are the subject of her various lawsuits in this District are *not* the same. (*Id.* at p. 133) When asked to explain how or why she made numerous allegations in her present Complaint in this action that have nothing to do with Defendant's premises or her observations of Defendant's premises, Ms. Kramer had no explanation, other than to state that "[B]ecause the problems everywhere pretty much are the same." (*Id.* at pp. 159-160)

E.     **Plaintiff Disabled Patriots Appears To Be Nothing More Than A Shell Itself**

In their Complaint, Plaintiffs allege that Ms. Kramer's co-Plaintiff, Disabled Patriots, is a "nonprofit Florida corporation," and that its members "include individuals with disabilities as defined by the ADA." (*See* Complaint at Paragraph 7, attached hereto as part of Group Ex. 1)

7

However, Ms. Kramer's testimony, as set forth above, makes it clear that Disabled Patriots is little more than a vehicle for the attorneys of record in this case to earn fees. Moreover, as set forth below, Ms. Kramer's additional deposition testimony further demonstrates that Disabled Patriots is far from the charitable organization under which it seeks standing in this case.

Ms. Kramer testified that one can become a member of Disabled Patriots simply by filling out a piece of paper, and that one need not be disabled to become a member. (*Id.* at pp. 102-104) Ms. Kramer further testified that Disabled Patriots does nothing in terms of acknowledging one as a member after such a piece of paper is submitted for "membership." (*Id.* at p. 104) Ms. Kramer testified that Disabled Patriots consists of a number of members which "[M]ight not even be 20." (*Id.* at pp. 104-105) Ms. Kramer testified, consistent with her testimony referenced above, that Disabled Patriots' only source of funding comes from litigation – but, again only when the attorneys of record choose to give some of that money to Disabled Patriots, which they have yet to do. (*Id.* at pp. 105, 120-121; *see also* pp. 122-124)

Ms. Kramer further testified that Disabled Patriots has no website; no newsletter; and no list of its membership of which she is aware. (*Id.* at pp. 106-107) Ms. Kramer testified that she believes that, "for a short time," Disabled Patriots has had a small officer in an unknown location in the State of Florida. (*Id.* at p. 112-114) She testified that such this office consists of a phone and answering machine. (*Id.* at p. 113) However, Ms. Kramer admitted that Disabled Patriots does not have any employees who work at that office, and that no business is conducted at that office. (*Id.* at p. 114) Ms. Kramer also testified that Disabled Patriots has no assets. (*Id.* at p. 125)

Significantly, Ms. Kramer testified that there are only *two other* members of Disabled Patriots of whom she is aware that are allegedly disabled. (*Id.* at pp. 139-147) However, of

8

those two individuals, she has only been able to verify that one of them is in fact actually disabled. (*Id.*)

### III. Argument

Rule 11 of the Federal Rules of Civil Procedure provides, *inter alia*, that a party or attorney who submits a pleading, certifies that it has been "formed after an inquiry reasonable under the circumstances," and that the "factual contentions" contained therein "have evidentiary support." *See also Rothman v. City of Chicago*, No. 02 C 3533 (N.D. Ill. May, 14 2003) (Loislaw) ("Federal Rule of Civil Procedure 11 requires the court to impose sanctions on a party or an attorney that signs a pleading or a motion which is not well grounded in fact or not warranted by existing law); (*citing Vukadinovich v. McCarthy*, 901 F.2d 1439, 1445 (7th Cir. 1990). In this case, Ms. Kramer's deposition testimony establishes that her Complaint did not satisfy that Rule 11 standard at the time of its filing with this Court.

Here, as set forth above, Plaintiff Kramer has admitted that many of the allegations contained within her Complaint have no application whatsoever to Defendant's premises. Yet, Ms. Kramer admits that she knowingly allowed her Complaint to be filed with those allegations. In addition, with respect to the remaining, vague allegations that are apparently premised upon Ms. Kramer's own observations, she has admitted that she did not know that those purported deficiencies constituted violations of the ADA, and that she expected someone to actually investigate those observations before this lawsuit was filed. However, as Ms. Kramer admitted, such an investigation never took place, or at least Ms. Kramer has no knowledge of any such investigation. Accordingly, Plaintiffs' factual allegations do not have factual support, as required by Rule 11, and there was no reasonable investigation conducted by anyone.

In fact, Ms. Kramer admitted that she had no communications whatsoever with the

counsel who signed and filed her Complaint, prior to the time that it was filed in this District. Ms. Kramer testified that the attorneys of record are not even her attorneys in this case, despite their representations to this Court to the contrary. Indeed, as set forth above, Ms. Kramer testified that the attorney(s) simply sent her a Complaint, out of the blue. Accordingly, it is clear that neither Ms. Kramer nor the attorney who signed and submitted her Complaint to this District had an appropriate factual basis for the allegations contained within that Complaint. It is no excuse, as suggested by Ms. Kramer here, that many of the same alleged problems exist at various places throughout the country.

For those reasons, Plaintiffs' Complaint should be dismissed in its entirety, with prejudice. In the alternative, this Court should limit Plaintiffs' pursuit of alleged violations of the ADA with respect to Defendant's premises to those things that Plaintiff Kramer claims she actually observed – but only if Plaintiff can more specifically identify those areas. As Ms. Kramer's testimony reveals, she has thus far been unable to articulate the locations of the alleged violations with any specificity so as to allow her to pursue her claims, or to allow Defendant to reasonably defend against those claims.

**WHEREFORE**, Defendant, by its undersigned counsel, respectfully requests the entry of an Order dismissing Plaintiffs' Complaint in its entirety, or for such other and further relief as is appropriate under the circumstances.

**Respectfully Submitted,**

By: /s/ Michael I. Leonard
Michael L. Leonard, Esq.
Meckler Bulger & Tilson, LLP
123 North Wacker Drive
Suite 1800
Chicago, IL 60606
(312)474-7925 (phone)
(312)474-7898 (fax)
michael.leonard@mbtlaw.com

Counsel for Defendant
Dated: March 6, 2008

**CERTIFICATE OF SERVICE**

I, Michael Leonard, an attorney, certify that on March 6, 2008, the above-referenced documents were filed electronically with the Clerk of the Court using the ECF system. A copy of the above-mentioned will be sent automatically to Thomas Bacon and a copy will be sent via U.S. mail to Jonathan E. Lerner.

/s/ *Michael I. Leonard*
Michael I. Leonard