IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DISABLED PATRIOTS OF AMERICA, INC., a Florida Not-For-Profit Corporation, and BONNIE KRAMER, Individually, <br><br> Plaintiffs, <br> v. <br><br> TOWN & COUNTRY CHICAGO ASSOCIATES, LLC, A Foreign Limited Liability Company, <br><br> Defendant. <br> _____ | : <br> : Case No.: 1:07-cv-06362 <br> : <br> : Judge Joan H. Lefkow <br> : <br> : <br> : <br> : **PLAINTIFFS' REPLY IN** <br> : **SUPPORT OF MOTION TO** <br> : **COMPEL AND OPPOSITION TO** <br> : **DEFENDANT'S RULE 11** <br> : **MOTION TO DISMISS** <br> : |

Plaintiffs, DISABLED PATRIOTS OF AMERICA, INC., and BONNIE KRAMER, and by and through undersigned counsel, hereby file this Reply in Support of their Motion To Compel [DE 17] and Opposition To Defendant's Rule 11 Motion To Dismiss.

In the Response In Opposition [DE 19] to Plaintiffs' Motion To Compel, and Motion To Dismiss Pursuant To Rule 11 [DE 20](collectively referred to as Defendant's "Opposition")[1] Defendant submits the Deposition Transcript of Bonnie Kramer (Exhibit 2). Based on this transcript, Defendant and its counsel, Michael Leonard, advance a litany of absurd propositions to support their claims that Plaintiffs have violated Fed. R. Civ. Pro. 11 in bringing the instant action. It should be noted that Defendant makes no dispute that the information sought by Plaintiffs is discoverable. Defendant merely states that Plaintiffs have a baseless lawsuit and therefore are not entitled to any discovery whatsoever. To support this statement, Defendant and Mr. Leonard make a host of

---

[1] Both briefs submitted by Defendant are virtually identical.

1

statements which reflect a nearly complete ignorance of the applicable provisions of the Americans With Disabilities Act ("ADA") and further attempt to misrepresent and misconstrue the testimony of Ms. Kramer.

### **Plaintiff Kramer Visited Defendant's Premises, Encountered And/or Became Aware Of ADA Violations**

The underlying premise advanced by Mr. Leonard and his client is that Ms. Kramer purportedly "admitted" that Plaintiffs "pled allegations that are wholly without basis with respect to Defendant's premises and "had no basis for filing this action". Defendant's Opposition, at pp. 1-2.

The ADA violations present at Defendant's property are accurately described in paragraph 11 of the Complaint. A comparison to these allegations to the applicable provisions of the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"), and the pictures taken by Ms. Kramer and her friend show that Defendant's facility is riddled with ADA violations. A copy of the relevant portions of the ADAAG is attached hereto as Exhibit A. References to Ms. Kramer's deposition testimony show that she either encountered these violations or knew of their existence.

First, Ms. Kramer visited the facility on August 4, 2007 with her boyfriend and son and made a purchase. See Exhibit B. Ms. Kramer and her boyfriend took a number of photographs of the facility and the violations she observed while she was there. See Exhibit B1-28. Kramer Depo. P. 10. The many problems encountered and observed by Ms. Kramer are alleged at paragraph 11 of the Complaint, and are generally described below.

In her deposition, Ms. Kramer testified that she and her companion drove around the entire shopping area and observed many violations in Defendant's parking lot and

took pictures. Depo. At pp. 23-41. In the Complaint, Plaintiffs allege that the parking lot has non-compliant signage because many signs are missing and others are not the proper height.

Exhibit B2 is a picture of such a violation. There, the picture shows two parking spaces without proper signage in the foreground, with a significant number of other similar problems in the background. There, it appears that Defendant merely placed signage in the *general vicinity* of its designated parking spaces. As the picture shows, perhaps half of the parking spaces have no sign at all - a clear violation of the ADAAG section 4.6.

As Exhibit B2 reveals, the signs are barely as tall as the SUV truck which appears in the same picture. Clearly, if that SUV were parked in the first parking space, it would obscure the sign from the vicinity of the second parking space, violating the height requirement of ADAAG section 4.6.4. According to Ms. Kramer, the signs were but a littler higher than their own small Honda. Depo. At 29.

The Complaint also alleges non-compliant ramps and ramps without any handrails, in violation of Section 4.8.2, 4.8.4, 4.8.5 and 4.8.6 of the ADAAG. The pictures set forth in Exhibits B3 through B10 show that the property has many long ramps which completely violate these ADAAG provisions. These long changes in level, which qualify as non-compliant ramps, can be found in pictures B3-5 (same ramp), B6-7 (another ramp), B8 (ramp), B9 (ramp) and B10 (ramp).

The Complaint also alleges that Defendant's facility has non-compliant curb ramps in violation of Sections 4.7.2, 4.7.5, 4.7.6, and 4.7.9 of the ADAAG. Exhibits B11 through B16, show curb cuts which have non-compliant side flares which are too steep

and unsafe. ADAAG Figure 12a requires that the side flares can be no steeper than the ratio of 1:10. The side flares depicted in these photos are significantly steeper and therefore unsafe.

Additionally, these curb cuts have improper detectable warnings. ADAAG section 4.29 requires that such warnings contain colors which contrast with the adjoining surfaces. The warnings depicted in these pictures are the same color as the adjoining surfaces and are therefore non-compliant.

With respect to the restrooms, Plaintiffs allege several violations, including non-compliant floor space, exposed pipes, grab bars, non- urinals, toilet stalls, mirrors, dispensers, changing area, and amenities. The pictures set forth at Exhibits B17 – B28 depict just such conditions. Exhibits B17 and 18 show two different restroom sinks without insulated pipes, required by ADAAG section 4.19.4 and 4.24.6, which would serve to protect a disabled persons legs from burning their legs on hot pipes.

The pictures set forth in Exhibits B19 and 20 show a feminine napkin dispenser that has non-compliant controls because the controls require tight grasping and twisting of the hand to operate. See ADAAG section 4.27. Disabled persons such as Ms. Kramer, with diminished use of the hands, are unable to easily operate such mechanisms. Moreover, Defendant apparently adheres to a policy and procedure of placing the garbage can in front of the napkin dispenser, placing it out of the required reach range for persons in wheelchairs in violation of ADAAG section 4.2.4, 4.2.5, 4.2.6 and 4.27. Likewise, the toilet seat paper dispenser in Exhibit B21 is also out of reach for wheelchair bound persons, violating the above-referenced sections.

4

Exhibit B21 shows a toilet with the flush control on the improper side, making it difficult and sometimes impossible for a wheelchair bound disabled person to flush the toilet. This violates ADAAG section 4.16.5. Exhibits B22-24 show another toilet with the flush control on the wrong side.

The grab bar behind the toilet in Exhibits B23-24 is entirely unusable because Defendant apparently adheres to a policy and procedure of storing objects in front of it. Moreover, ADAAG section 4.16.4 and ADAAG figure 29 require that the grab bar be a minimum of 36 inches long with at least 24 inches extending from the center line of the toilet toward the wide side. This grab bar is obviously too short.

Exhibit B25 shows a mirror which is mounted too high for a wheelchair bound disabled person to use. ADAAG section 4.19.6 requires that the bottom edge be no higher than 40 inches above the floor.

Exhibit B26, taken by Ms. Kramer's companion,[2] depicts a urinal which is too high for disabled use. ADAAG section 4.18.2 and 4.23.5 require that at least one urinal be no higher than 17 inches above the floor.

Exhibit B27 shows a coat hook which is mounted near the top of the stall door and is too high for a wheelchair bound disabled person to use. ADAAG section 4.2.5 and 4.2.6 require that the hook be lower.

Exhibit B28 shows the baby changing station cannot be opened by persons like Ms. Kramer who have limited use of their hands, violating ADAAG section 4.27.

In this regard, Ms. Kramer testified as having encountering, observing, or knowing of the above conditions. Depo. At pp. 42-58.

---

[2] Depo. At p. 44.

Additionally, the expert found many additional violations during his initial investigation of the premises. These included service counters which are too high to use (in excess of 36''),[3] in violation of ADAAG section 7.2; changes in levels of greater than ½ inch, violating Section 4.3.8 of the ADAAG; a lack of accessible route from the street, public sidewalk and parking areas, violating ADAAG sections 4.3.2, 4.5.2, 4.7.1 and 4.8.2; improper slopes in the disabled use spaces access aisles, violating ADAAG sections 4.1.2 and 4.6.3[4]. See Exhibit C.

## Defendant And Its Counsel Grossly Misinterpret The Applicable Provisions Of The ADA

It is difficult to conceive how Defendant or its counsel could make R. 11 threats or assertions before this Court which so badly ignore the ADA. As a disabled person, Ms. Kramer has standing to sue pursuant to 42 U.S.C. Section 12188 because she was subject to discriminatory barriers and knew of the existence of others.

Defendant's counsel, Mr. Leonard, grossly misunderstands a disabled person's right to sue to enforce his or her civil rights. Mr. Leonard implies that Ms. Kramer must first tip over and fall before she can seek injunctive relief to remedy uneven surfaces. See Depo. At 38. According to Mr. Leonard, Ms. Kramer must first burn her legs before she can enforce her right to have the protection of wrapped pipes. Opposition at p. 3-4; Depo. At pp. 47-49. According to Mr. Leonard, Ms. Kramer must have been put in danger before she could seek redress for uneven ground. Opposition, at p. 3. Contary to Mr. Leonard's absurd interpretation, a civil rights plaintiff has standing to sue regardless of whether a discriminatory barrier impairs his or her use of a premises. Pickern v. Best

---

[3] See also Depo. At p. 66.
[4] See also Depo. At 25, 37, 39.

Western Timber Cove Lodge, 2002 WL 202442, 2002 U.S. Dist. Lexis 1709 (E.D. Cal. 2002).

Clearly, Mr. Leonard overlooks how badly non-compliant his client's premises is. Indeed, Neither Mr. Leonard nor his client offer any authorities to support their conclusion that Plaintiffs have no ADA claim. To the contraty, the overwhelming weight of authorities contravenes Defendant's baseless legal assertions.

First, an ADA plaintiff need not personally encounter, know of, or allege every violation at a place of public accommodation, yet they have the right to seek complete relief and remediation of every ADA violation which discriminates against their particular handicap. Doran v. 7-Eleven, Inc., 506 F.3d 1191(9th Cir. 2007); Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1138 (9th Cir. 2002); Steger v. Franco, 228 F.3d 889, 894 (8th Cir. 2000); Parr v. Kapahulu Investments, 96 F. Supp.2d 1065, 1081 (D. Haw. 2000); Wilson v. Pier 1 Imports, 439 F. Supp.2d 1054,1063-64 (E. D. Ca. 2006); Gregory v. Melrose Group, 2003 U.S. Dist Lexis 22276 *14 (E.D. La. 2003); Gregory v. Melrose Group, 2003 U.S. Dist Lexis 22276 *14 (E.D. La. 2003); Eiden v. Home Depot, Inc,. 2006 U.S. Dist. Lexis 38423 * 13-15 (E.D. Cal. 2006).[5]

In Doran v. 7-Eleven, Inc., 506 F.3d 1191, the Ninth Circuit recently held that an ADA Plaintiff has right to seek discovery of the entirety of barriers as a necessary pre-requisite to the crafting of injunctive relief. With respect to a disabled person's right to sue, the Court held that there must be *at least one statutory violation* of which he or she has knowledge. 506 F.3d at 1198. Thereafter, the disabled person may conduct

---

[5] These cases were previously cited. Despite this, Mr. Leonard asserts (entirely without supporting authority) that Plaintiff's R. 34 inspection should be limited to the specific barriers encountered by Ms. Kramer. Opposition, at pp. 10-11.

7

discovery as to the entirety of violations which discriminate against him on the basis of his particular disability.  506 F.3d at 1198-2001.

## **Defendant and Mr. Leonard Advance a Host of Inaccuracies**

Ironically, in seeking to avoid discovery on claims of R. 11 violations, and in seeking dismissal of this action, Defendant and Mr. Leonard advance a slew of inaccurate portrayals from Ms. Kramer's deposition.

Defendant's many specious claims are as follows:

1. That Ms. Kramer has no standing because she did not know precisely how high the parking signs are.  Opposition at p. 3.  To the contrary, Ms. Kramer testified that the signs were not high enough to see and but a little higher than her small Honda.  Depo. At 28-29.  The expert confirmed this observation in his initial report.

2. That Ms. Kramer has no standing because she did not attempt to hang anything on the coat hook in her bathroom stall.  Opposition, p. 4.  In fact, Ms. Kramer testified that the hook was out of her reach.  Depo. At 50.

3. Defendant claims that Ms. Kramer "admitted" that she does not know how long a grab bar must be in order to be compliant.  Opposition, p. 4.  Yet Ms. Kramer stated that the grab bar (Exhibits B23-24) was not long enough and it was therefore harder for her to use.  Depo. At 53-55.  The expert (and Exhibits B23-24) confirms this fact.

4. Defendant claims that Ms. Kramer "admitted" that the expert, ADA Compliance Team, Inc. "has not been retained", works on a contingency basis, or performed any investigation regarding the compliance of the

premises prior to the initiation of this lawsuit. Opposition, at 5. To the contrary, Ms. Kramer testified that she does not know how the expert is paid (Depo. At 82, 83, 98), and, in fact, the expert did perform and analysis and generate a report prior to the initiation of this lawsuit. Mr. Leonard received a copy of this report long ago. See Exhibit C.

5. According to Defendant, Ms. Kramer "admitted" that she and Disabled Patriots are nothing more than "Straw Plaintiffs" and would receive nothing from this lawsuit. Opposition, at 6. From this preposterous statement, it is obvious that Mr. Leonard has not read the applicable provisions of the ADA. 42 U.S.C. Section 12188 does not entitle the Plaintiffs to damages. Rather, Plaintiffs gain the civil right to visit the facility free of discriminatory barriers. Moreover, Defendant's assertions are contrary to the many cases which recognize the fee shifting provisions of this and other civil rights statutes are purposefully designed to encourage plaintiffs to act as private attorneys general.[6]

6. Defendant asserts that the undersigned attorneys do not represent Ms. Kramer, that she never asked for this lawsuit to be filed or that she never asked anyone to draft the complaint. Opposition, at 6-7. To the contrary, Ms. Kramer received a copy of the proposed Complaint and signed an authorization for the

---

[6] Hensley v. Eckerhart, 461 U.S. 424, 445(1983)("All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.");Texas State Teachers Assoc., v. Garland Independent School Dist., 489 U.S. 782, 791 (1989)(noting "private attorney general" doctrine served in fee shifting civil rights statute, thus entitling plaintiffs to attorney feesBruce v. City of Gainesville, 177 F.3d 949, 952 (11th Cir. 1999).

undersigned attorneys to initiate the instant action in October 2007. Exhibit D.

7. Defendant asserts that this action is identical to other ADA actions filed by Ms. Kramer and Disabled Patriots. Opposition, at 1. However, in each case, paragraph 11 is specifically tailored to the violations found at the different facilities. Essentially, Defendant's argument herein is that Ms. Kramer and Disabled Patriots are "vexatious litigants" – an argument routinely used by defendants and rejected by courts. For example, in <u>Wilson v. Pier I Imports</u>, 411 F. Supp.2d 1196, 1199 (E.D. Ca. 2006), the Court held that such "righteous indignation" must be "bottomed on [defendant's] own blameless conduct, and that they are the subject to a frivolous lawsuit because they, in fact, have not violated the ADA." Thus, the central issue herein is not whether Plaintiffs have filed other ADA lawsuits, but whether Defendant's facility is in compliance with the ADA. As shown above, Defendant's facility is riddled with ADA violations.

8. Defendant asserts that Disabled Patriots has no standing to bring this action. Opposition, p. 7-9. To the contrary, pursuant to <u>Hunt v. Washington State Apple ADVER. Comm'n</u>, 432 U.S. 333, 343 (1977), Disabled Patriots has the right to sue herein.

## **Defendant's Rule 11 Argument Is Disingenuous**

Most absurd is the assertion by Defendant and Mr. Leonard that Plaintiffs have violated Fed. R. Civ. P. 11 by bringing the instant action. Rule 11 sanctions are warranted where a party presents the court with a pleading or other paper "that

to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,' is not 'warranted by existing law' or is lacking in evidentiary support." Mortle v. United Parcel Service, 2007 U.S. App. Lexis 22112 *6 (7th Cir. 2007).

In the present case, Ms. Kramer's testimony, the pictures taken, and the initial expert report generated prior to the filing of this lawsuit, and a comparison to the applicable ADAAGs and case law establish that Ms. Kramer visited the facility and encountered and/or knew of a variety and number of ADA violations present. Indeed, Plaintiffs have ample authority to support their claims and Defendant's arguments are presented in a vacuum completely detached from the law. It is Defendant, in filing its Rule 11 Motion To Dismiss, who has filed a pleading or paper that is completely unwarranted by existing law.

## Conclusion

For the foregoing reasons, Plaintiffs' Motion To Compel should be granted and Defendant's Motion To Dismiss should be denied.


Respectfully submitted,

Attorneys for Plaintiffs:
__/s/ Thomas B. Bacon__
Thomas B. Bacon, Esq.
Attorney-At-Law
1515 Grant Street
Hollywood, FL 33020
ph. (954) 925-6488
fax (954) 237-5506

and

Jonathan E. Lerner, Esq.
P.O. Box 694

11

Wilmette, IL 60091
847-271-2360
fx 847-256-3038

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served upon the persons listed below this 11th day of March, 2008, via the Court's CM/ECF system:

Michael L. Leonard, Esq.
Mecker, Bulger & Tilson, LLP
123 North Wacker Drive, Suite 1800
Chicago, IL 60606

/s/ Thomas B. Bacon